# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**ARIES BUILDING SYSTEMS, LLC**     PLAINTIFF

V.     CAUSE NO. 5:16-cv-16-DCB-MTP

**PIKE COUNTY, MISSISSIPPI**     DEFENDANTS
**AND CITY OF MCCOMB**

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motions for Summary Judgment **[Doc. Nos. 58, 60]** filed by defendants Pike County Board of Supervisors (the "Board") and City of McComb (the "City") and the Motion for Partial Summary Judgment **[Doc. No. 62]** filed by plaintiff Aries Building Systems, LLC ("Aries"). Having considered the motions, responses, and applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

### I. Facts and Procedural History[1]

These motions turn on the scope of the pre-suit notice provision of the Mississippi Tort Claims Act ("MTCA") and competing interpretations of a "buy-back" clause in a contract between the Board and Aries for the sale of 40 acres of land situated in Pike County, Mississippi (the "Purchase Agreement").

---

[1] The facts of this case are familiar to the parties and the Court. Therefore, the Court will not restate them in their entirety. For a detailed exposition of the facts, see Doc. No. 22.

### A. *The "Buy-Back" Clause*

The Purchase Agreement was apparently executed with an eye toward developing an "oilfield workforce housing development or lodging facility" [Doc. No. 62-1, ¶6]. Under its terms, the Board was to convey the land to Aries for a purchase price of $475,000 [Doc. No. 62-1, at ¶9]. The Purchase Agreement granted the Board certain "buy-back" rights. If Aries failed to deliver on specific benchmarks by specific dates, the Board would have the right to "buy-back" the property at the original purchase price [Doc. No. 62-1, at ¶5].

The benchmark triggering the disputed "buy-back" provision requires Aries to have "a minimum of 120 beds located at the Development Site within the first twelve (12) months after closing on the property" [Doc. No. 62-1, at ¶5] (emphasis added).

Aries contends that it satisfied the "120 bed" benchmark when it placed on the property six single-wide trailers housing 120 beds. Therefore, Aries submits, the City lacks the right to "buy-back" the property at the purchase price [Doc. No. 63, p. 7]. The Board and the City disagree [Doc. No. 64, p. 5]. They contend that the phrase "120 beds" means 120 beds "provided with power, water, and sewer connections and appliances in place" [Doc. No. 64, p. 9].

*B. This Suit*

In February of 2016, Aries sued the Board and the City in this Court, seeking a declaration that it had complied with the "buy-back" clause, injunctive and other equitable relief, and damages for breach of the Purchase Agreement and for civil conspiracy [Doc. No. 1]. It is undisputed that Aries did not timely comply with the pre-suit notice requirement of the Mississippi Tort Claims Act ("MTCA") with regard to either defendant [Doc. Nos. 61, p. 3; 68, p. 4]. Thus, any of Aries's claims that fall within the MTCA are barred.

*C. Motion Practice*

The Board and the City have each previously filed motions to dismiss and motions for summary judgment [Doc. Nos. 9, 12, 13, 31, 32, 35, 36]. The Court has denied each [Doc. Nos. 22, 23, 47].

The Board again moves for summary judgment, again seeking dismissal of all Aries's claims as barred by the MTCA's pre-suit notice provision. Likewise, the City moves for summary judgment, invoking the same MTCA argument raised by the Board, but also maintaining that Aries's breach of contract action cannot stand for lack of a contract between Aries and it. Aries seeks partial summary judgment against the Board and the City, asking the Court to declare that it has complied with the "120 bed" clause of the Purchase Agreement and to permanently enjoin and equitably estop

3

the Board from exercising its "buy-back" option. The Court addresses each motion in turn.

## II. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the [record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this initial showing, the burden shifts to the non-movant to "designate specific facts showing that there is a genuine issue for trial." Davis v. Fort Bend Cty., 765 F.3d 480, 484 (5th Cir. 2014). A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). With respect to each of the three summary judgment motions before it, the Court views the facts and draws reasonable inferences in the light most favorable to the non-movant. Duncan v. Wal-Mart Louisiana, L.L.C., 863 F.3d 406, 409 (5th Cir. 2017).

## III. The Board's Motion for Summary Judgment

Aries has sued the Board seeking (1) declaratory and injunctive relief; (2) to equitably estop the Board from exercising

its "buy-back" option under the Purchase Agreement; (3) damages for civil conspiracy; and (4) damages for breach of contract [Doc. No. 1, at ¶¶25-49].

The Board moves for summary judgment dismissing all claims against it, contending that all of Aries's claims are barred by the MTCA for failure to provide the requisite pre-suit notice[2] [Doc. No. 58]. In its Response, Aries contends that the MTCA's pre-suit notice provisions are inapplicable because its claims for breach of contract, civil conspiracy, and equitable, declaratory, and injunctive relief are beyond the scope of the MTCA [Doc. No. 65].

### A. *The MTCA*

Generally, tort suits against the State of Mississippi and its political subdivisions must be brought under the MTCA. MISS. CODE ANN. § 11-46-7; City of Jackson v. Harris, 44 So. 3d 927, 932 (Miss. 2010). The MTCA also applies to claims for tortious breach of contract and breach of an implied contractual term. Whiting v. Univ. of Southern Miss., 62 So. 3d 907, 916 (Miss. 2011); City of Jackson v. Estate of Stewart ex rel. Womack, 908 So. 2d 703, 711 (Miss. 2005). The MTCA springs from sovereign immunity, the idea

---

[2] The Board also contends that Aries's non-compliance with the MTCA's pre-suit notice provision implicates federal subject-matter jurisdiction [Doc. No. 58, ¶1]. This argument is unpersuasive. Aries's compliance vel non with the pre-suit notice provision is a merits question with no bearing on the Court's constitutional power to adjudicate this controversy involving diverse parties, an amount exceeding $75,000 in controversy, and a plaintiff alleging an injury, traceable to the defendants, and redressable by a favorable decision. See 28 U.S.C. § 1332; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

5

that a political subdivision cannot be sued absent its consent. Tallahatchie Gen. Hosp. v. Howe, 154 So. 3d 29, 31 (Miss. 2015). Functionally, the MTCA represents the state's limited consent to suit:

> [T]hrough the MTCA provisions, the State has waived its immunity and the immunity of its political subdivisions from claims for money damages arising out of the torts of such governmental entities.

Ivy v. East Mississippi State Hosp., 191 So. 3d 120, 122 (Miss. 2016).

Like most tort claims acts, the MTCA incorporates a "Notice of Claim" provision. See MISS. CODE ANN. § 11-46-11. Under its terms, a plaintiff suing a governmental entity "must file a notice of claim with the chief executive of the governmental entity." MISS. CODE ANN. § 11-46-11(1). The Supreme Court of Mississippi requires "substantial compliance" with the MTCA notice provisions. Fairley v. George Cty., 871 So. 2d 713, 717 (Miss. 2004).

Viewing all facts and drawing all inferences in Aries's favor, the Court separately analyzes each of the claims Aries has asserted against Pike County to determine which, if any, fall under the MTCA. See Zumwalt v. Jones Cty. Bd. of Sup'rs, 19 So. 3d 672, 688 (Miss. 2009) ("The MTCA does not apply to all claims against governmental entities," thus "each claim must be examined for MTCA application.").

*B. Declaratory, Injunctive, and Equitable Relief*

The Board again cites no authority to support its contention that Aries's claims for declaratory, injunctive, and equitable relief are subject to the MTCA [Doc. Nos. 58, 59]. The plain language of the statute supports Aries's position: the MTCA extends only to those suits based upon "any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract." MISS. CODE ANN. § 11-46-3(1). Requests for declaratory, injunctive, and equitable relief neither sound in tort nor involve the "breach of an implied term of any warranty or contract." Id. Other courts that have addressed the issue agree. See Atlantic Specialty Ins. Co. v. Webster Cty., Miss., 2014 WL 3437019, *7 (N.D. Miss. July 11, 2014) (MTCA inapplicable to declaratory relief); Ma v. City of Columbus, 1997 U.S. Dist. LEXIS 13514 at *4 (N.D. Miss. July 30, 1997) (same); Whiting, 62 So. 3d at 919 (describing injunctive relief as "an exception" to the MTCA).

On these claims, the Board fails to carry its summary judgment burden — i.e., proving, as a matter of law, that claims for equitable, injunctive, and declaratory relief are governed by the MTCA's pre-suit notice provision. Therefore, the Board is not entitled to summary judgment on Aries's claims for declaratory, injunctive, and equitable relief.

### C. Civil Conspiracy

The parties dispute whether the MTCA applies to claims for civil conspiracy. Aries directs the Court to the predicate wrong supporting its civil conspiracy claim. Because that predicate is breach of a contract rather than a tort, Aries contends, the MTCA does not apply to its civil conspiracy claim.

Civil conspiracy requires proof of "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 459 (5th Cir. 2005) (quoting Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So. 2d 777, 786 (Miss. 2004)). The civil conspiracy claim must be based on an underlying tort. Aiken v. Rimkus Consulting Grp. Inc., 333 F. App'x 806, 812 (5th Cir. 2009).

It appears that no Mississippi court has determined whether a claim for civil conspiracy is covered by the MTCA. See Alidoust v. Hancock Cty., Mississippi, No. 1:17CV35-LG-RHW, 2017 WL 3298682, at *3 n. 4 (S.D. Miss. Aug. 2, 2017) (recognizing the uncertainty of civil conspiracy's MTCA status). In the absence of a final decision by the Mississippi Supreme Court on the applicability of the MTCA to civil conspiracy claims, it is the duty of this Court "to determine, in its best judgment, how the highest court of the state would resolve the issue if presented

with the same case." American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003); see also, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

In making an Erie guess, the Court's task is "to predict state law, not to create or modify it." Keen v. Miller Envtl. Grp., Inc., 702 F.3d 239, 243 (5th Cir. 2012). The Court "defer[s] to intermediate state appellate court decisions . . . and may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns." Travelers Cas. And Sur. Co. of America v. Ernst & Young LLP, 542 F.3d 475, 483 (5th Cir. 2008).

Civil conspiracy is a tort. See Blanks v. State, 594 So. 2d 25, 28 (Miss. 1992) abrogated by Bilbo v. Thigpen, 647 So. 2d 678 (Miss. 1994); RESTATEMENT (SECOND) OF TORTS § 876 (1979). Indeed, Mississippi courts have applied the one-year statute of limitations period set forth in MISS. CODE ANN. § 15-1-35, entitled "actions for certain torts," to conspiracy claims. Gasparrini v. Bredemeier, 802 So. 2d 1062, 1066 (Miss. Ct. App. 2001). The nature of the civil conspiracy cause of action does not change simply because it is predicated upon a breach of contract.

The language of the statute, as well as decisions from the Mississippi Supreme Court, suggest that Mississippi's high court would find civil conspiracy to be covered by the MTCA. The MTCA applies to "any wrongful or tortious act." MISS. CODE ANN. § 11-46-

9

3(1). The "clear intent of the legislature in enacting MTCA was to immunize the state and its political subdivisions from any tortious conduct." Black v. Ansah, 876 So. 2d 395, 397 (Miss. Ct. App. 2003) (emphasis in original).

Aries's own characterization of its conspiracy claim militates towards a finding that it is covered by the MTCA. For example, Aries submits that the Board and the City conspired to deprive it of its property rights by "annex[ing] certain territory into the City's corporate limits" [Doc. No. 1, ¶15]. As a result, Aries contends that it "will suffer damages which include loss of income and its own property rights" [Id. at ¶44]. Shorn of its rhetorical dressing, the "wrong" or "tortious conduct" underlying Aries's conspiracy claim appears to be the Board and the City's wrongful filing of a petition to annex certain property — not simple breach of contract.

A comparison of Aries's conspiracy claims to other claims sounding in tort under Mississippi law reinforces this characterization. The conspiracy claim articulated by Aries closely resembles a claim for wrongful interference with contractual relations, a claim which the Mississippi Supreme Court has long held sounds in tort rather than contract. Bailey v. Richards, 111 So. 2d 402, 407 (Miss. 1959).

Even drawing all reasonable inferences in Aries's favor, this Court is satisfied that the Mississippi Supreme Court would

conclude that Aries's conspiracy claim is covered by the MTCA. And there is no dispute that Aries did not comply with the MTCA's pre-suit notice requirement. Therefore, the Court finds that summary judgment is warranted as to Aries's conspiracy claims against both the Board and the City.

### D. Breach of Contract

In an earlier Order and Opinion, this Court noted that the Board "failed to address whether the MTCA should apply to Aries's claims for . . . breach of contract" [Doc. No. 47, p. 12]. It again fails to do so here.

It is well-settled that the MTCA does not apply to suits for breach of an express contract. See, e.g., Idom v. Natchez-Adams Sch. Dist., 115 F. Supp. 3d 792, 805–06 (S.D. Miss. 2015); Weible v. Univ. of S. Mississippi, 89 So. 3d 51, 60 (Miss. Ct. App. 2011) (citing City of Jackson, 908 So. 2d at 710-11). Aries has sued the Board for breach of an express contract in the form of the Purchase Agreement [Doc. No. 1, at ¶¶45-49]. Therefore, the MTCA does not apply, and the Board is not entitled to summary judgment on Aries's claims for breach of an express contract.

### IV. The City's Motion for Summary Judgment

The City's motion for summary judgment restates many of the arguments raised by the Board in its motion and supporting memorandum. Like the Board, the City contends that Aries's claims for declaratory, injunctive, and equitable relief must be

dismissed because of Aries's non-compliance with the MTCA pre-suit notice provision. For the reasons stated in section III(B) above, the Court concludes that the City is not entitled to summary judgment on Aries's claims for declaratory, injunctive, and equitable relief, but is entitled to summary judgment on Aries's conspiracy claim.

### A. Breach of Contract

The City's motion differs from the Board's on the issue of breach of contract. Although it is undisputed that the Board and Aries were parties to an express contract (the Purchase Agreement), the parties dispute the nature and existence of any contract between Aries and the City.

The nature of that contract is relevant for purposes of the MTCA analysis. The MTCA applies to implied contracts but not express contracts. See City of Jackson, 908 So. 2d at 711. If the contract between the City and Aries is implied, the MTCA governs and its pre-suit notice provision will defeat Aries's claim. Simpson v. Alcorn State Univ., 27 F. Supp. 3d 711, 719-20 (S.D. Miss. 2014). If that contract is express, as Aries contends, then the MTCA does not apply, and summary judgment would be unwarranted. See Mississippi v. Rinehart, No. 115CV00077GHDDAS, 2016 WL 4703516, at *12 (N.D. Miss. Sept. 7, 2016).

Generally, "the existence of a contract and its terms are questions of fact to be resolved by the fact-finder." Wells v.

Price, 102 So. 3d 1250, 1256 (Miss. Ct. App. 2012). An implied contract is one that arises from the conduct of the parties. Dominquez v. Palmer, 970 So. 2d 737, 740-41 (Miss. Ct. App. 2007). An express contract is "[a] contract whose terms the parties have explicitly set out." BLACK'S LAW DICTIONARY 393 (10th Ed. 2014).

The City attaches an affidavit from Mayor Whitney Rawlings stating "no contract of any type" was entered into by Aries and the City [Doc. No. 60-1]. Conversely, Aries insists that it "did not sue for tortious breach, nor did it sue for implied breach" and attaches a letter from Mayor Rawlings stating that the City intended to provide certain utility services to the Aries property [Doc. No. 68, p. 4]. Aries also directs the Court to deposition testimony indicating that the City actively negotiated the Purchase Agreement [Doc. Nos. 67-5, 67-6].

The Court finds summary judgment inappropriate at this time on this issue. It is significant that Mayor Rawlings's letter, as an exhibit to the Purchase Agreement, is considered part of the Purchase Agreement. See Purchase Agreement, § 16(f) ("All of the exhibits attached to this Agreement are incorporated in, and made a part of, this Agreement."). In that letter, Mayor Rawlings documents the City's "intent . . . to provide collection and treatment of the sanitary wastewater (sewage) to be discharged from [Aries's] proposed development" [Doc. No. 62-1, p. 42]. Thus, the Court finds genuine issues of material fact regarding the

13

nature and existence of an express contract between Aries and the City which preclude summary judgment.

## V. Aries's Motion for Partial Summary Judgment

Aries moves for partial summary judgment against the Board, asking the Court to (1) declare that it has complied with the "120 bed" clause of the Purchase Agreement; and (2) enjoin and equitably estop the Board from exercising its "buy-back" rights under the Purchase Agreement [Doc. No. 63].

Resolution of the motion centers on the meaning of "120 beds" within the "buy-back" provision of the Purchase Agreement. That provision requires Aries to have "a minimum of 120 beds located at the Development Site within the first twelve (12) months after closing on the property" [Doc. No. 62-1, at ¶5].

Armed with the "plain meaning" doctrine, Aries asserts that the "buy-back" provision required only that it "have 120 beds on the property before Jan. 28, 2016" [Doc. No. 63, p. 5]. The Board argues that adopting Aries's interpretation leads to "absurd results," and insists "120 beds" means 120 occupiable beds, housed in a structure outfitted with the utility connections necessary for ordinary habitation [Doc. No. 64, pp. 8-11]. It offers a morass of parol evidence it contends establishes that the parties understood "120 beds" to mean 120 beds fit for habitation [Doc. No. 64, pp. 8-11]. It is undisputed that Aries has placed on the property 128 beds, housed in six single-wide trailers, without

14

access to sewer services or electricity [Doc. Nos. 64, p. 10; 62-3, at ¶5].

Generally, the Mississippi Supreme Court resolves disputes over contractual interpretation through a three-step process. Tupelo Redevelopment Agency v. Abernathy, 913 So. 2d 278, 284 (Miss. 2005). First, the Court looks to the "four corners" of the Purchase Agreement, analyzing the language used by the parties. Id. at 284. If intent remains elusive, the Court looks to the "discretionary 'canons' of contract construction." Id. Finally, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." Id.

But this three-tiered approach does not always resolve the interpretative issue, and the Mississippi Supreme Court does not require strict adherence to it in all circumstances. Enniss Family Realty I, LLC v. Schneider Nat. Carriers, Inc., 916 F. Supp. 2d 702, 708 (S.D. Miss. 2013). Indeed, "[w]here terms of a contract are ambiguous, the contract will be interpreted in a reasonable manner." Id. at 283. And "[w]here there is a dispute as to the meaning of a contract clause, a party's interpretation must be reasonable to warrant adoption." Lehman-Roberts Co. v. State Highway Comm'n of Mississippi, 673 So. 2d 742, 744 (Miss. 1996). The existence of ambiguity in a contract is a question of law for the courts, Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.,

15

857 So. 2d 748, 751 (Miss. 2003); however, the subsequent interpretation in the event of ambiguity "presents a question of fact." Tupelo Redevelopment Agency, 913 So. 2d at 283.

Turning to the "120 beds" clause at issue here, the Court begins by reviewing the "four-corners" of the Purchase Agreement. Because § 16(f) of the Purchase Agreement holds that all exhibits attached to the Purchase Agreement are considered part of it, Exhibits "A" – "I" attached to the Purchase Agreement are within its "four-corners." Those exhibits make plain that the parties intended to expeditiously outfit the property with sewage services and electricity [Doc. No. 62-1, pp. 34-51]. The Addendum to the Purchase Agreement confirms that the parties intended to create an "oilfield workforce housing development or lodging facility" [Doc. No. 62-1, p. 23]. The "four-corners" approach mandates that the Purchase Agreement's "120 bed" clause be interpreted with these objectives in mind.[3]

Aries submits that "bed" can have but one ordinary meaning: a piece of furniture containing a mattress and springs. But the Court remains unconvinced. Indeed, "bed" is also defined as "[a] place where one may sleep, lodging." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 159 (5th ed. 2016). It is not unreasonable to suggest

---

[3] The second tier of contractual interpretation, "canons of construction," provides little help here. Both parties actively participated in the negotiation and drafting of the Purchase Agreement [Doc. Nos. 62-1, p. 18; 62-6, p. 6].

that the parties, contemplating an "oilfield workforce housing development or lodging facility," intended the latter definition of "bed," one bespeaking habitation, to trump the former.

Adopting Aries's interpretation of the "120 bed" clause could also lead to absurd results. In its papers, Aries takes the position that it would have fulfilled that clause had it simply placed 120 army cots in the middle of a field [Doc. No. 69, pp. 6-7]. This cannot be.

Aries is correct to note that absurdity of result is immaterial where the terms of a contract are "express and free of doubt" [Doc. No. 69, p. 4]. But it mistakenly characterizes the "120 bed" clause as susceptible of only one meaning. As outlined above, one of the "ordinary meanings" of "bed" connotes habitability and, by extension, access to utilities such as sewer services and electricity. Because this clause is <u>not</u> free of doubt, "[a] construction leading to an absurd, harsh or unreasonable result . . . should be avoided." <u>Frazier v. Ne. Mississippi Shopping Ctr., Inc.</u>, 458 So. 2d 1051, 1054 (Miss. 1984).

In light of the context of the agreement, the multiple "ordinary meanings" of "bed," and the potential consequences of adopting the interpretation advanced by Aries, the Court finds the "120 bed" clause of the Purchase Agreement to be ambiguous, and submits that subsequent interpretation presents a question of fact that cannot be resolved on summary judgment. <u>See</u> <u>Tupelo</u>

Redevelopment Agency, 913 So. 2d at 283. To be clear, the Court is not declaring that the "120 bed" clause means what the Board says it does, nor that it does not carry the meaning ascribed to it by Aries. Rather, the Court rules that the phrase is ambiguous in its context; thus, its interpretation must be resolved by the trier of fact.

Having found summary judgment unwarranted on the contractual interpretation issue, the Court does not reach Aries's requests for summary judgment on its injunctive and equitable relief claims because both such claims were predicated upon this Court's endorsement of Aries's interpretation of the "120 beds" clause.

Accordingly,

**IT IS HEREBY ORDERED** that the Motions for Summary Judgment filed by Defendant Pike County **[Doc. No. 58]** and Defendant City of McComb **[Doc. No. 60]** are **GRANTED** as to the conspiracy claims asserted by Plaintiff Aries Building Systems, LLC against Defendants in Count III of the Complaint and **DENIED** as to all other claims.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment **[Doc. No. 62]** filed by Plaintiff Aries Building Systems, LLC is **DENIED**;

SO ORDERED this the 17th day of October, 2017.

                                        /s/ David Bramlette
                                        UNITED STATES DISTRICT JUDGE